BROWN BROTHERS, Appellants, v. KORNS and LEE, Appellees.

**False representations:** PROOF. In an action for false representations it must not only appear that the representations were made and relied upon, but that they were known by defendant to be false.

**Sales:** WARRANTIES: CONSTRUCTION. In the interpretation of a writing the document must be read as a whole; so that in construing an advertisement of fancy cattle offered for sale, containing a general warranty as to breeding quality and also providing that "a cow with calf at side is a proven breeder;" the purchaser of a cow with a calf at her side cannot rely on the general warranty but takes the animal at his own risk.

*Appeal from Poweshiek District Court.*— HON. B. W. PRESTON, Judge.

THURSDAY, JUNE 6, 1907.

ACTION for damages for breach of warranty in the sale of a cow. Judgment for defendants upon a directed verdict, and plaintiffs appeal.— *Affirmed.*

*Prouty, Coyle & Prouty* and *Clark & Clark,* for appellants.

*U. M. Reed* and *W. R. Lewis,* for appellees.

Weaver, C. J.— The defendants are breeders of short-horn cattle at Victor, Iowa.   On June 7, 1902, they held a public sale at which numerous animals of said breed were offered to purchasers.   This sale had been advertised by circulars and catalogues setting forth a list and description of the animals to be offered for sale and the terms upon which the offer was to be made.   In said catalogue there was listed a cow " Lily," to the pedigree of which the following note was appended: " Lily is a fine large cow, straight, smooth, of good quality, and a good breeder.   Has bull calf at foot dropped September 1, 1901 by Imp., Red. Light 149, 769."   The published guaranty so far as applicable, was in the following words:

Our Guaranty and what it means:   On males, all bulls, guaranteed breeders when properly cared for.   If bulls fail to breed, we must be notified within six months from date of sale.   We reserve the right when so notified to have the bull returned to us for further trial, bull to be in good condition as when sold, and, if he then fails to breed, the purchase price will be returned, with interest at the rate of seven per cent. per annum from time of sale until bull was returned to us, but if bull breeds for us, he will be returned to purchaser at his expense.   On females, all females of breeding age are guaranteed beeders when properly cared for.   A cow with calf at side is proven a breeder.   Purchaser will be required to try females for six months, and, if barren, we reserve the right to have them sent to us for 90 days' trial, and, if we succeed in getting them with calf, they will be returned to purchaser at his expense; otherwise money will be refunded as above.   A cow that has passed service four months at date of sale is considered a breeder, but should such cow break service within six weeks theretofore we must be notified by wire at our expense, and, if she is proven not to be a breeder, same conditions apply as above.   All known defects will be pointed out on day of sale.   Every animal offered will be sold to the highest bidder.

It should also be said that the catalogue described the cow Lily as having been bred May 8, 1902.  One of these catalogues was sent by defendants to the plaintiffs, who were residents of Humboldt county, and they attended the sale, at which they purchased the cow Lily with the bull calf, which the catalogue described as having been dropped by her in September, 1901.

It is alleged in the petition that this purchase was made under the printed warranty or guaranty which we have above quoted from the defendants' catalogue, and that the cow proved, in fact, not to be a breeder.  In a second count plaintiffs declare upon a breach of warranty said to be contained in the note which we have referred to as being attached to the pedigree of the animal in the catalogue, to the effect that Lily was a " fine cow, straight, smooth, a good quality, and ˳ a good breeder."  A third count is grounded upon the allegation that the description of the cow and of her condition and quality as contained in the catalogue were false and misleading, and known so to be by the defendants when they issued it, and that plaintiffs relied thereon, to their injury. The answer of the defendants admits the sale of the cow, and that such sale was made under the terms contained in the printed catalogue, and aver that by the express language of their offer the cow Lily having a. calf at her side was to be considered a breeder, and deny that they ever in any manner undertook to -warrant her breeding qualities or be in any. manner responsible if she failed to again become with calf. There is no claim in pleading or in evidence that defendants made any oral representation with reference to the cow, and, the warranty, if there be one, must be found in the language of the printed catalogue. .

I.    Taking up the issues in inverse order, we will first consider whether there is anything in the record which re-
1. False repre- sentations: proof.    quired the claim of false representations to be submitted to the jury.  In our judgment there was not.  To sustain that charge there must be evidence

not only of the representations and of their falsity and of the reliance thereon by plaintiffs to their injury, but it must also be shown that defendants made the representations knowing them to be false. In this we think the plaintiffs wholly failed. The only item of evidence having even the slightest tendency in that direction is the fact that during the months between September and May the cow had been bred several times unsuccessfully. But it appears without substantial dispute that she had borne a calf in the year 1900, and again in 1901, and that it was not unusual nor indicative of defective conditions in such animal, while suckling a calf to " break service." Moreover, it is shown, without controversy, that this cow was bred on May 8th, some thirty days prior to the sale, considerably more than the period which would ordinarily intervene without break of service, thus affording fair ground for the belief that she was with calf. On such a narrow foundation we think a verdict finding the defendants guilty of false representations in this respect could not be permitted to stand.

II. We are also of the opinion that the plaintiffs cannot segregate the note appended to the printed pedigree to the effect that Lily was a good breeder from the rest of the matter in the catalogue, and rely upon that alone as they seek to do in the second count of the petition. To arrive at the meaning and intent of the printed invitation to purchasers, it is but fair as it is in accordance with elementary rules governing the interpretation of writings that we read the document as a whole. The only alleged cause of action over which there is any room for serious debate is the one stated in the first count of the petition which sets out the language of both clauses to which we have referred. Reading the entire catalogue so far as it is pertinent, we find that purchasers are expressly advised that among the conditions of the sale is one by which a cow with calf at side is proven a breeder. Now, this may not be a safe indication of continuing fertility in a cow, and a person

buying under such conditions may find the animal worthless for further breeding purposes, but it is a chance which a buyer is at liberty to take if he will, and, if being fully advised that this is a condition of any purchase he may make, he proceeds to buy, he alone is chargeable with the loss in the absence of fraud on part of the seller.    This particular cow was noted in the catalogue as having a calf at foot, and therefore coming within the definition of " breeder " as laid down by the terms of the offer.    The date of the birth of the calf was given, and the date when the cow had last been bred. Some question is raised in argument that the calf with this cow was weaned, and that, therefore, Lily was not a cow with calf " at side " within the meaning of the language of the catalogue.    We do not see how the objection can be of any avail.    The cow was offered for sale as being within this class, and therefore an animal which was excepted from the general warranty contained in the catalogue.    In other words, defendants offered this cow for sale expressly without warranty — offering no other assurance of her breeding quality except such as the buyer could draw from the fact that she had already produced one or more calves.    If plaintiffs elected to buy under such circumstances, the failure of the cow to breed does not constitute a breach of warranty for none was given.    We must not be understood as suggesting that the defendants could by this device avoid liability for misrepresentation or for concealment amounting to fraud in inducing sales of worthless or defective cattle.    No such case is presented by the record, and we are not called upon to discuss the proper remedy for such a wrong.

We agree with the trial court that plaintiffs failed to make a case for the jury, and the judgment appealed from is therefore *affirmed*.